# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

=====

## NO. 03-17-00796-CV

=====

**Jay Michael Barndt, Appellant**

**v.**

**Josie Lynn Barndt, Appellee**

=====

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. D-1-FM-15-006239, HONORABLE JAN SOIFER, JUDGE PRESIDING**

=====

## M E M O R A N D U M   O P I N I O N

Jay Michael Barndt appeals from the trial court's order in a suit affecting the parent-child relationship (SAPCR). The order appointed Jay[1] and Josie Lynn Barndt joint managing conservators of their child, C.B., and set out their corresponding rights and duties. The order also included provisions for Jay's and Josie's periods of possession of C.B. and ordered Jay to pay Josie monthly child support. In seven issues, Jay challenges numerous aspects of the order. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Jay and Josie's child, C.B., was born in May 2014.[2] The three lived together in a house in Austin until October 2015 when, after a period of discord, Josie moved out of the house

---

[1] Because the parties share a surname, we will refer to them by their given names for clarity.

[2] Jay and Josie were married in 2011 and divorced in 2012. They began seeing each other again in 2013 but did not remarry.

and took C.B. with her to live at her brother's house in Katy, Texas. Jay then filed suit seeking to be named a joint managing conservator with the exclusive right to designate C.B.'s primary residence. The case was tried to a jury to determine the issue of conservatorship, which of the conservators would have the exclusive right to designate the primary residence of the child, whether to impose a restriction on the geographic area in which to designate the child's primary residence, and, if so, the geographic area within which to maintain the child's primary residence. *See* Tex. Fam. Code § 105.002(c)(1) (party is entitled to jury verdict on issues of conservatorship, designation of primary residence, and restriction on geographic area within which primary residence may be designated). The remaining issues were tried to the court.

After a trial at which Jay, Josie, Jay's father and grandfather, Josie's brother and sister-in-law, and C.B.'s guardian ad litem testified, the jury determined that Jay and Josie should be appointed joint managing conservators of C.B. The jury determined that Jay should have the exclusive right to designate C.B.'s primary residence. The jury also restricted the geographic area within which Jay could designate C.B.'s residence to the "Houston Metropolitan Area."

The trial court then held a bench trial on the remaining issues, including possession, access, child support, and attorneys' fees. The trial court signed an order incorporating the jury's finding that Jay and Josie be appointed joint managing conservators. The order included the following provisions that are the basis for this appeal:

> • a modification of the geographic restriction for designating C.B.'s primary residence from "Houston Metropolitan Area" to "within either Fort Bend County or Harris County, Texas";

2

• a "Choice of Schools" provision ordering that C.B. be enrolled in a specific preschool and then in certain elementary, middle, and high schools in the Katy Independent School District;

• a requirement that the possession schedule put in place by temporary orders remain in effect until Jay has completed a 52-week Battering Intervention and Prevention Program (BIPP)[3];

• a provision granting Josie the right to maintain possession of C.B.'s passport;

• a provision granting Josie the exclusive right, after consultation with Jay, to consent to medical, dental, and surgical treatment involving invasive procedures;

• a provision granting Josie the exclusive right to make decisions concerning C.B.'s education;

• a requirement that Jay pay Josie child support; and

• an order that attorneys' fees and costs be borne by the party who incurred them.

After entry of the order, Jay requested that the trial court make findings of and conclusions of law. The trial court filed findings of fact and conclusions of law. This appeal followed.

## DISCUSSION

Appeals from a final order in a suit affecting the parent-child relationship are generally governed by the same rules as other civil appeals under the Texas Rules of Appellate Procedure. *See* Tex. Fam. Code § 109.002(a). To preserve error, a timely, specific objection must be made. Tex. R. App. P. 33.1. Generally, if a party does not make an objection or otherwise raise a complaint before the trial court, it cannot make the complaint for the first time on appeal. *See id.*;

---

[3] The order provides that, upon completion of the BIPP program, Jay have increased periods of possession over the following four months culminating in approximately 50/50 shared possession of C.B. with Josie.

3

*In re C.O.S.*, 988 S.W.2d 760, 765-66 (Tex. 1999) ("Generally, our civil rules of procedure and our decisions thereunder require a party to apprise a trial court of its error before that error can become the basis for reversal of a judgment."). A "timely" objection is one interposed at a point in the proceedings that gives the trial court the opportunity to cure any alleged error. *See Solomon v. Steitler*, 312 S.W.3d 46, 58 (Tex. App.—Texarkana 2010, no pet.). A complaint about the legal or factual sufficiency of the evidence presented in a civil nonjury trial may, however, be raised for the first time on appeal. *See* Tex. R. App. P. 33.1(d); *Sherman v. Boston*, 486 S.W.3d 88, 95 n.5 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

In his first issue, Jay asserts that the trial court erred by stating that the geographic area within which Jay could designate C.B.'s primary residence was "within Fort Bend County or Harris County, Texas" rather than the "Houston Metropolitan Area" as found by the jury when answering that question in the charge. According to Jay, the Texas Family Code does not authorize the trial court to change the original geographic description chosen by the jury, and by doing so the trial court abused its discretion. *See Lenz v. Lenz*, 79 S.W.3d 10, 20 (Tex. 2002) (trial court not authorized to contravene jury's verdict on issue of primary residence by imposing additional geographic restrictions); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (trial court errs in applying law when it misinterprets law, applies wrong law, or ignores law). Jay did not, however raise this objection to the trial court's order at a point when the trial court had an opportunity to correct this alleged error. *See Solomon*, 312 S.W.3d at 58. Jay did not file a motion for new trial or otherwise raise any objection to the trial court's order. Consequently, Jay has waived this issue on appeal. Tex. R. App. P. 33.1.

4

In his second issue, Jay asserts that the trial court abused its discretion by giving Josie the right to maintain possession of C.B.'s passport. According to Jay, there was no evidence at trial to support a finding that Jay was "unfit to exercise his rights as conservator, including the right to have possession of the child's passport." We will construe this as a challenge to the legal sufficiency of the evidence supporting the trial court's determination regarding C.B.'s passport.[4] Jay maintains that, in the absence of any evidence at trial regarding which parent should have possession of C.B.'s passport, the trial court's decision that Josie should have the right to maintain the passport was an abuse of discretion.

A trial court abuses its discretion if it acts without reference to any guiding rules and principles such that the ruling is arbitrary or unreasonable. *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004). In family law cases, the abuse-of-discretion standard of review overlaps with the traditional sufficiency standards of review; as a result, insufficiency of the evidence is not an independent ground of reversible error, but instead constitutes a factor relevant to our assessment of whether the trial court abused its discretion. *See Zeifman v. Michaels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). We engage in a two-pronged inquiry: (1) whether the trial court had sufficient information on which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Id.* at 588. The mere fact that a trial court decided an issue in a manner differently than an appellate court would under similar circumstances does not establish an

---

[4] Any complaint that the trial court misapplied the law by allowing a non-custodial parent to maintain the child's passport has been waived because it was not timely presented to the trial court. *See* Tex. R. App. P. 33.1.

5

abuse of discretion. *Id.* at 587. The traditional sufficiency review comes into play with regard to the first question. *Id.* at 588.

The trial court exercised its discretion and determined that Josie should maintain C.B.'s passport. Although Jay asserts that there must be some evidence to support a trial court's decision to grant the right to maintain the child's passport to the "non-custodial" parent,[5] he cites no authority so limiting the trial court's discretion regarding to which parent it may assign that right. Moreover, we find no authority to support Jay's claim that, as the "custodial" parent, he must be granted the right to maintain the child's passport unless there is some evidence that he is "unfit" to exercise his rights as conservator. The Texas Family Code does not include the right to maintain a passport as one of the rights of a joint managing conservator with the right to designate the child's primary residence (the "custodial" parent). Nor is there a presumption that the custodial parent should have the right to maintain a child's passport. Jay's argument that he must be granted that right in the absence of evidence that he is "unfit" to be joint managing conservator is unpersuasive.

On appeal, Jay also asserts that the issue of possession of C.B.'s passport was never raised or disputed at trial. Jay maintains that the trial court's orders regarding the passport were an abuse of discretion and constituted a "pattern of the trial court of stripping [Jay] of rights as custodial parent." However, because Jay failed to object to the inclusion of a passport provision during the trial court proceedings, he has waived that complaint on appeal. Tex. R. App. P. 33.1.[6]

---

[5] Jay explains in his brief that by "non-custodial" parent he means the joint managing conservator who does not have the right to determine the primary residence of the child.

[6] We also note that, while Josie was given the right to "maintain" C.B.'s passport, nothing in the order either prevents Jay from using C.B.'s passport for international travel with C.B. or allows Josie to refuse to permit Jay to have C.B.'s passport if needed. There was also no evidence

In his third issue, Jay argues that the possession schedule included in the trial court's order was an abuse of discretion because it arbitrarily and unreasonably ordered a possession schedule other than a standard possession schedule for at least twelve months.[7] According to Jay, the order contravened the Texas Family Code provisions for possession of a child when the parents reside 100 miles or less apart. *See* Tex. Fam. Code § 153.252. Again, however, a review of the record reflects that Jay did not raise this complaint in the trial court by filing a motion for new trial or otherwise. Therefore, he has waived this issue on appeal. *See* Tex. R. App. P. 33.1.

In his fourth issue, Jay asserts that the trial court erred by requiring him to complete a 52-week BIPP program in the absence of any pleadings requesting that he do so and when, according to him, the jury found that there was no history of family violence.[8] Jay did not raise in the trial court a complaint about the inclusion in the order of a requirement that he complete a BIPP program and, consequently, has waived that complaint on appeal. Moreover, even assuming that a

_____

that there was any danger of international abduction of C.B. by either parent. As a practical matter, only one person at a time may maintain possession of a child's passport, and we cannot conclude that the trial court abused its discretion by designating Josie, one of two joint managing conservators, as that person.

[7] The trial court ordered that the possession schedule established by temporary orders remain in effect until Jay has competed a 52-week BIPP program.

[8] Although the jury was not asked to answer a specific question about family violence, they were instructed that: "A person may not be appointed a joint managing conservator if that person has a history or pattern of past or present child neglect or of physical or sexual abuse directed against a parent, a spouse, or a child." We presume that the jurors understood and followed the court's instructions in the jury charge absent evidence to the contrary. *See Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 167 (Tex. 1982) ("An appellate court must assume that a jury properly followed the trial court's instructions."). According to Jay, by naming him a joint managing conservator, the jury implicitly found that he did not "have a history . . . of past . . . physical abuse directed against a parent."

7

pleading requesting that a parent complete a BIPP program is required to support such an order, the record plainly demonstrates that the issue of whether Jay should complete a BIPP program was tried by consent. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991) (observing that "the party who allows an issue to be tried by consent and who fails to raise the lack of a pleading before submission of the case cannot later raise the pleading deficiency for the first time on appeal"). Victoria Porter, C.B.'s guardian ad litem, testified that she believed that domestic violence was a large part of the case, that in her opinion Jay needed anger management training in order to learn to communicate without becoming violent, and that she could recommend a standard visitation schedule once Jay has completed a 52-week BIPP program. Counsel for Jay did not object to this testimony, nor did he raise any lack of pleading at trial or after.

Jay also contends that it was an abuse of discretion to order a 52-week BIPP program when, according to him, the jury found that there was no history of family violence. We construe this as a challenge to the sufficiency of the evidence supporting the court's finding that Jay should complete a 52-week BIPP program as a precondition to having increased possession of C.B. Jay's argument assumes that a trial court may not order a party to complete a BIPP program in the absence of a finding that the party has "a history of physical abuse directed against a parent." The Family Code places no such restriction on the trial court's discretion in fashioning a SAPCR order that is in the best interests of the child. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). "The trial court is given wide latitude in determining the best interests of a minor child." *Id.* To determine whether a trial court abused its discretion, the appellate court must decide whether the court acted without reference to any guiding rules or principles, that is, whether its decision was arbitrary or

8

unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). An abuse of discretion does not occur when the trial court bases its decision on conflicting evidence. *See In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.) (citing *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding)). The trial court does not abuse its discretion so long as there is some evidence of substantive and probative character to support the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

Here, there was ample evidence to support the trial court's decision that Jay should complete a 52-week BIPP program. The trial court expressly found that, "An Agreed Final Protective Order was issued by this Court against [Jay] on December 15, 2015, with a finding that family violence has occurred and is likely to occur in the future." This protective order was in place at the time of trial. Moreover, as previously stated, Porter, C.B.'s guardian ad litem, testified that in her opinion Jay needed anger management training to learn to communicate without becoming violent and that she could only recommend a standard visitation schedule after Jay completed a 52-week BIPP program. There was conflicting testimony regarding whether, and the degree to which, Jay had committed domestic violence against Josie. The evidence was undisputed, however, that Jay and Josie's relationship was volatile and involved a high degree of conflict. Josie testified about several instances in which fighting between her and Jay caused C.B. anxiety. Porter testified that although she saw many positive aspects to Jay's interactions with C.B., she believed C.B. could be harmed unless Jay learns new skills to learn to communicate without being violent. Porter also expressed concern for C.B. in the event Jay became involved in a new relationship that involved domestic violence. There was sufficient evidence to support the trial court's decision that it was in

9

C.B.'s best interest for Jay to complete a 52-week BIPP before exercising increased possession of C.B. as set forth in the order. Accordingly, we cannot say that the trial court abused its discretion in making this decision. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007).

In his fifth issue, Jay asserts that the trial court abused its discretion and violated "the fundamental right that a fit parent has to make decisions concerning the care, custody and control of his child by denying appellant an opportunity to decide, to be consulted or to give contribution to the educational decisions of his child." Jay refers to the trial court's order that Josie have the "exclusive right to make decisions concerning the child's education." Jay did not object at the trial court to this provision of the order, nor did he file a motion for new trial raising this (or any other) complaints about the order. Jay's argument regarding granting Josie the right to make decisions regarding C.B.'s education has not been preserved for appellate review. Tex. R. App. P. 33.1; *see In re A.B.P.*, 291 S.W.3d 91, 97 (Tex. App.—Dallas 2009, no pet.).

Jay also failed to preserve for appellate review the complaints he raises in issues six and seven. Jay's sixth issue complains about the trial court's order that he pay Josie child support and his seventh issue challenges the trial court's failure to award him attorneys' fees despite the fact that, according to him, he was the "prevailing party" in the underlying proceeding. Because neither of these complaints was brought to the trial court's attention after rendition of the order, they are not preserved. Tex. R. App. P. 33.1; *see Henry v. Henry*, 48 S.W.3d 468, 481 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (issue regarding attorneys' fees could not be raised for first time on appeal); *Villasenor v. Villasenor*, 911 S.W.2d 411, 420 (Tex. App.—San Antonio 1995, no writ) (party failed to object to award in open court or in motion for new trial).

10

**CONCLUSION**

For the foregoing reasons we overrule each of Jay's issues in this appeal. The trial court's order is affirmed.

_____

Chari L. Kelly, Justice

Before Chief Justice Rose, Justices Kelly and Smith

Affirmed

Filed: April 19, 2019