In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-19-00455-CV**

**IN THE INTEREST OF C.D.W.**

**On Appeal from the County Court at Law No. 3**
**Montgomery County, Texas**
**Trial Cause No. 12-08-08916-CV**

## MEMORANDUM OPINION

In this post-divorce modification suit affecting the parent-child relationship, appellant, the mother of the minor child C.D.W. (hereinafter "Mother"),[1] raises three issues challenging the trial court's order imposing a geographic restriction on the child's primary residence and requiring her to travel to Father's home each month between 6:00 p.m. and 7:00 p.m. to provide him with C.D.W.'s medication for the

---

[1]To preserve the parties' privacy, we refer to the parties by their relationship to the child, and we refer to the child using his initials. *See* Tex. Fam. Code Ann. § 109.002(d).

following month, as well as the trial court's refusal to modify child support to the maximum allowable amount for one child. We affirm the trial court's judgment.

PERTINENT BACKGROUND

Mother and Father divorced in 2014. In the Final Decree Of Divorce, the trial court appointed Mother and Father joint managing conservators of C.D.W. and gave Mother the exclusive right to designate C.D.W.'s primary residence within Montgomery County, Texas. Father subsequently filed a Petition To Modify The Parent-Child Relationship, in which he requested that the trial court appoint him the person with the exclusive right to designate C.D.W.'s primary residence and, among other things, asked that child support payments previously ordered be terminated if he were granted the exclusive right to determine C.D.W.'s primary residence and that Mother be ordered to pay child support.

Mother filed an Emergency Counterpetition to Modify The Parent-Child Relationship, in which she requested that Father be removed as joint managing conservator and that she be appointed sole managing conservator "with the exclusive rights as set forth in the Texas Family Code § 153.132." Mother asserted that Father had "engaged in a history or pattern of emotional abuse and alienating behavior" toward her and asked the trial court to consider said alleged conduct in appointing her sole managing conservator. In addition, Mother asked the trial court to order that Father's periods of possession be supervised. Mother pleaded that child support

2

payments should be increased by $100 per month "in accordance with the guidelines in chapter 154 of the Texas Family Code."

Attached to Mother's counterpetition was a supporting affidavit, in which she asserted that C.D.W. was taking multiple ADHD medications, as well as an anti-anxiety medication, and had been under the care of a psychotherapist for several years. According to Mother's affidavit, Father had convinced C.D.W.'s psychiatrist to take C.D.W. off his anti-anxiety medications, and Mother averred that she feared C.D.W. would suffer "severe trauma and worsening anxiety" if he had prolonged exposure to Father without anti-anxiety medication and ongoing psychotherapy. Mother further averred that Father's behavior would significantly impair C.D.W.'s emotional wellbeing, "resulting in a potentially traumatic and devastating outcome." Before trial, the trial judge signed an Agreed Order On Discovery Responses, which stated that "[e]ach party agrees to the following trial stipulation[:] that at the time of this order both parties would be subject to child support being assessed at the maximum guideline amount for one child."

At trial, the only questions submitted to the jury pertained to the issue of whether the terms of conservatorship should be modified to make Mother the sole managing conservator of C.D.W. and, if the jury found conservatorship should not be modified, whether Father should instead be appointed the conservator with the exclusive right to determine C.D.W.'s primary residence. Specifically, question one

3

of the two-question charge asked, "Should the joint managing conservatorship be modified to appoint [Mother] as the sole managing conservator of [C.D.W.]?" The jury answered "yes" to question one. The charge instructed the jury not to answer question two unless it answered "no" to question one, so the jury did not answer question two, which asked whether Father should be designated the conservator with the exclusive right to determine C.D.W.'s primary residence. The trial judge signed a letter ruling rendering on the non-jury issues from the trial. In the letter ruling, the trial judge stated as follows, in pertinent part:

> I would like to impose a geographical restriction on [Mother]'s right to establish the primary residence of the child[,] but I am not sure that I am able to do so given the procedural posture of the case. If both counsel agree that the court may impose a geographical restriction, then I impose a geographical restriction to Montgomery County, Texas and counties contiguous thereto. If both counsel agree that I cannot, then of course the order should give [Mother] the exclusive right to establish the child's primary residence, along with all other 153.132 rights, exclusively. If counsel are in disagreement on the point, then I request points and authorities on the issue be filed prior to entry. I do not need extensive briefing, merely a cover sheet listing the authoritative citations is sufficient.

The trial court also denied Mother's request to modify Father's child support obligation.

Father filed a legal memorandum, in which he asserted that section 153.132 of the Texas Family Code and case law support the trial court's imposition of a geographic restriction on a parent appointed sole managing conservator. *See* Tex. Fam. Code Ann. § 153.132 (providing that a parent appointed sole managing

4

conservator has the right to designate the child's primary residence unless limited by court order). Father also filed a First Amended Motion To Enter Final Order, in which he stated that the parties had not resolved their differences regarding Mother's proposed order and asked the trial judge to enter an order "in the form attached" to Father's motion as an exhibit. According to Father, the trial court should retain the geographic restriction provisions, and he requested the addition of language regarding the parties' exchange of C.D.W.'s medication.

Mother also filed a legal memorandum, in which she asserted that section 105.002 of the Texas Family Code provides that a trial court may not contravene a jury verdict on the issues of appointment of a sole managing conservator or the determination of whether to impose a restriction on the geographic area within which a joint managing conservator may designate the child's primary residence. *See id*. § 105.002. Mother also argued in her memorandum that the court could not submit to the jury questions on the issues of support, specific terms or conditions of possession or access, or any right or duty of a conservator, other than the determination of which joint managing conservator has the exclusive right to designate the primary residence of the child. According to Mother, "[o]nce a jury awards a party sole managing conservatorship, a geographic restriction cannot be imposed by either a jury or a court." Mother maintained that the cases cited by Father involved "bench trials and therefore do not apply."

5

The trial judge signed an Order In Suit To Modify Parent-Child Relationship, in which she removed Father as a managing conservator, appointed Mother sole managing conservator, and awarded Mother the exclusive right to designate C.D.W.'s primary residence. The order also required Mother to provide Father "once each calendar month sufficient quantity of the child's prescribed medication(s), if any, for the child's estimated dosage needs for the following calendar month[,]" and ordered Mother to deliver the medication to Father's residence between 6:00 p.m. and 7:00 p.m., and to provide Father at least twenty-four hours' advance notice, "via text message, of the date and time in which she will deliver the medication[.]" In the order, the trial judge also denied Mother's request to modify Father's child support obligation.

After the trial court signed the order, Father filed a Motion To Modify, Correct, Or Reform Judgment, in which he argued that entry of an order that does not impose a geographic restriction on the child's residence was improper. Father argued that section 153.132 of the Texas Family Code unequivocally states that a sole managing conservator has the right to designate the child's primary residence unless said right is limited by court order. Father pleaded that "[o]rdering a geographic restriction does not unlawfully circumvent the sole managing conservator's exclusive right to determine the child's residence because it is clearly allowed by the plain language of the statute." In addition, Father argued that the trial

6

court is not prohibited from imposing a geographic restriction on a sole managing conservator merely "because the conservatorship issue was determined by a jury instead of the Court." Father maintained that although section 105.002 of the Texas Family Code allows a party to demand a jury trial, the issue of whether a geographic restriction is in C.D.W.'s best interest "was not given to the jury as a jury issue[,]" and therefore, the trial court's imposition of a geographic restriction did not contravene the jury's determination. Furthermore, Father argued that the evidence supported the trial court's finding that a geographic restriction is in C.D.W.'s best interest.

The trial judge signed an order granting Father's Motion To Modify, Correct, Or Reform Judgment and stated that its order "should include a geographic restriction of Montgomery County, Texas." Subsequently, the trial judge signed a reformed order, which provided as follows, in pertinent part:

> IT IS ORDERED that the primary residence of the child shall be within Montgomery County, Texas, and the parties shall not remove the child from Montgomery County, Texas, for the purpose of changing the primary residence of the child until this geographic restriction is modified by further order of the court of continuing jurisdiction or by a written agreement that is signed by the parties and filed with that court.

Mother filed a notice of appeal from the trial court's reformed order, as well as the trial court's previous order in the suit to modify the parent-child relationship.

7

ISSUE ONE

In her first issue, Mother argues that the trial court abused its discretion by imposing the geographic restriction because the trial court lacked authority to "modify the jury's verdict" appointing Mother sole managing conservator or restrict her rights as such. As an alternative argument in her discussion of issue one, Mother argues that the trial judge modified her statutory rights "as sole managing conservator without issuing a sufficient written finding of fact that the geographic restriction is in the best interest of [C.D.W.] as required by Texas Family Code [§] 153.072."

We review a trial court's decision in a case concerning a modification of conservatorship under an abuse of discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In the Interest of M.A.M.*, 346 S.W.3d 10, 13 (Tex. App.—Dallas 2011, pet. denied). "The trial court is given wide latitude in determining the best interests of a minor child." *Gillespie*, 644 S.W.2d at 451. A trial court abuses its discretion when it acts arbitrarily or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *In the Interest of M.A.M.*, 346 S.W.3d at 13. We will not find an abuse of discretion if the trial court's decision is supported by some substantive and probative evidence. *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.).

Section 153.132 of the Texas Family Code provides as follows, in pertinent part: "*Unless limited by court order*, a parent appointed as sole managing conservator of a child has . . . the following exclusive rights: (1) the right to designate the primary residence of the child[.]" Tex. Fam. Code Ann. § 153.132(1) (emphasis added). Section 153.132 provides that the trial court may exercise discretion to limit the rights otherwise granted under the statute. *Id*. As discussed above, Mother asserts that section 105.002 of the Texas Family Code prohibits a trial court from contravening a jury verdict on the issues of appointment of a sole managing conservator or the determination of whether to impose a restriction on the geographic area within which a joint managing conservator may designate the child's primary residence. *See id*. § 105.002(c). The trial court's order appointing Mother sole managing conservator with the exclusive right to determine C.D.W.'s primary residence within Montgomery County, Texas, did not contravene the jury's determination that Mother should be appointed sole managing conservator of C.D.W. No other issues, including the issue of whether a geographical restriction should be imposed, were presented to the jury. On this record, we conclude that the trial court did not abuse its discretion by imposing a geographical restriction. *See Downer*, 701 S.W.2d at 241-42; *Gillespie*, 644 S.W.2d at 451; *In the Interest of M.A.M.*, 346 S.W.3d at 13.

We turn now to Mother's alternative issue one argument that the trial court modified her statutory rights as sole managing conservator without a sufficient written finding of fact that the geographic restriction is in C.D.W.'s best interest. *See* Texas Fam. Code Ann. § 153.072 (providing that "[t]he court may limit the rights and duties of a parent appointed as a conservator if the court makes a written finding that the limitation is in the best interest of the child[]"). A finding in a modification order that the trial court's orders are in the best interests of the child generally satisfies the requirements of section 153.072. *See In the Interest of J.C.R.*, No. 13-18-00491-CV, 2020 WL 3396603, at *5 n.4 (Tex. App.—Corpus Christi June 18, 2020, no pet.) (mem. op.); *Amir-Sharif v. Tex. Dep't of Family & Protective Servs.*, No. 05-13-00958-CV, 2015 WL 4967239, at *5 (Tex. App.—Dallas Aug. 20, 2015, pet. denied) (mem. op.); *In the Interest of C.A.*, No. 09-03-576-CV, 2004 WL 1699875, at *1 (Tex. App.—Beaumont July 29, 2004, pet. denied) (mem. op.). Under a section entitled "*Findings*[,]" the trial court's reformed order recites that "the requested modification as set forth herein is in the best interest of the child." In addition, under the section entitled "*Conservatorship*[,]" the trial court's order stated that removing Mother and Father as managing conservators and appointing Mother sole managing conservator is in the best interest of C.D.W. Within the "*Conservatorship*" section of its order, the trial court ordered that Mother, as sole managing conservator, has "the exclusive right to designate the primary residence

10

of the child within Montgomery County, Texas[.]" We conclude that the trial court's written findings in its reformed order were sufficient to satisfy the requirements of section 153.072. *See In the Interest of J.C.R.*, 2020 WL 3396603, at \*5 n.4; *Amir-Sharif*, 2015 WL 4967239, at \*5; *In the Interest of C.A.*, 2004 WL 1699875, at \*1. Having found each of Mother's issue one arguments to be without merit, we overrule issue one.

ISSUE TWO

In her second issue, Mother asserts that the trial court erred by failing to honor what Mother asserts is a binding stipulation in the parties' agreed order on discovery responses. Mother asserts that the order required the trial judge to assess child support at the maximum set by the Legislature in section 154.125 of the Family Code. *See* Tex. Fam. Code Ann. § 154.125. Mother maintains that the doctrines of res judicata or collateral estoppel required the trial court to set Father's child support obligation at the maximum.

As discussed above, the trial court's Agreed Order On Discovery Responses stated that "[e]ach party agrees to the following trial stipulation[:] that at the time of this order both parties would be subject to child support being assessed at the maximum guideline amount for one child." The agreed order, as its title suggests, pertained to the parties' discovery responses, documents to be produced, and depositions that would be taken. With the exception of the sentence to which Mother

11

points, nothing in the agreed order mentioned the upcoming trial. In addition, the agreed order did not contain clear and unequivocal language of finality. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001) (holding that when there has not been a conventional trial on the merits, an order or judgment is final if it actually disposes of every pending claim and party or clearly and unequivocally states that it finally disposes of all claims and all parties); *In the Interest of M.B.D.*, No. 09-18-00278-CV, 2020 WL 1879474, at *1 (Tex. App.—Beaumont Apr. 16, 2020, no pet.) (mem. op.). Res judicata, also known as claim preclusion, prevents relitigation of a claim or cause of action that has been finally adjudicated, and collateral estoppel, also known as issue preclusion, prevents relitigation of issues that were already resolved in a prior suit. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628, 631 (Tex. 1992). The child support stipulation language in the agreed order is expressly limited to circumstances existing "at the time of" the order, and it merely states that both parties would be "subject to" a finding of maximum support by the trial court. We conclude that the agreed order did not constitute a binding stipulation on the trial court's exercise of its discretion, and we further conclude that because the agreed order was not final, neither res judicata nor collateral estoppel applies. *See Lehmann*, 39 S.W.3d at 205; *Barr*, 837 S.W.2d at 628, 631. For all these reasons, we overrule issue two.

ISSUE THREE

In her third issue, Mother contends that the trial court abused its discretion by requiring her to travel to Father's home each month between 6:00 and 7:00 p.m. to provide Father with C.D.W.'s medication for the following month. Mother erroneously asserts in her brief that neither party requested the provision regarding providing C.D.W.'s medication. As discussed above, the record indicates that Father requested the inclusion of language regarding exchange of C.D.W.'s medication in his First Amended Motion To Enter Final Order. Father attached a supporting affidavit to his motion, in which he averred that C.D.W.'s new school does not allow medication to be dropped off with the campus nurse for exchange, and because Mother no longer permitted Father to visit her home and he and Mother live thirty minutes apart, there is a need for the inclusion of language regarding the exchange of medication. Father also stated as follows in his affidavit: "I am requesting that [Mother] drop the medication off at my house at her convenience once a month as I believe that is the least disruptive way to handle the exchange of medication."

The trial court included the provision regarding the exchange of C.D.W.'s medication in both its original order and its reformed order. Although Mother filed a Motion To Modify, Correct, Or Reform The Judgment, her complaints in said motion were limited to the trial court's inclusion of a geographic restriction. The appellate record does not reflect that Mother responded to Father's pleadings

13

requesting the inclusion of the provision about the exchange of medication or otherwise made the trial court aware that she had any objection to the inclusion of such a provision. Because Mother did not make a timely and specific objection, in which she made the trial court aware of her complaint regarding the provision about the exchange of C.D.W.'s medication, we conclude that Mother has failed to preserve this issue for appellate review. *See* Tex. R. App. P. 33.1(a). Moreover, even if Mother had properly preserved the issue for review, on this record, we conclude that the trial court did not abuse its discretion by requiring Mother to deliver C.D.W.'s medications once monthly between 6:00 and 7:00 p.m. on a day of her choice. *See Downer*, 701 S.W.2d at 241-42; *Gillespie*, 644 S.W.2d at 451; *In the Interest of M.A.M.*, 346 S.W.3d at 13. Therefore, we overrule issue three. Having overruled each of Mother's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on April 30, 2021
Opinion Delivered September 9, 2021

Before Golemon, C.J., Kreger and Horton, JJ.